## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**JAY RILEY**                                                                          **PLAINTIFF**

**v.**                                                    **CIVIL NO. 2:23-cv-00037-HSO-BWR**

**PETAL MS CITY GOVERNMENT and**
**PETAL POLICE DEPARTMENT**                                              **DEFENDANTS**

### REPORT AND RECOMMENDATION

BEFORE THE COURT is the Complaint [1] filed by Plaintiff Jay Riley, who

proceeds *pro se* and *in forma pauperis*. Having screened Riley's Complaint under the

*in forma pauperis* statute, 28 U.S.C. § 1915(e)(2)(B), and for the reasons below, most

of Riley's claims should be dismissed under §1915(e)(2)(B). The claims that pass

screening are four federal constitutional claims proceeding through 42 U.S.C. §1983:

a civil conspiracy claim against the City of Petal, Mississippi (Petal); a civil conspiracy

claim against Hal Marx, Petal's former mayor, in his individual capacity; an excessive

force claim against former Petal Police Officer Deriginal Williamson (spelled

elsewhere "Dereginald"), in his individual capacity; and a failure to intervene claim

against Petal Police Officer [first name unknown] Lee, in his individual capacity.

### I.  BACKGROUND

On March 8, 2023, Riley filed his Complaint using a form civil case complaint.

Pl.'s Compl. [1]. In the caption of the Complaint, Riley listed "Petal MS City

Government" and "Petal Police Department" as Defendants. *Id.* at 1. Inside the

Complaint, Riley listed eight more Defendants: Petal Police Chief Matthew Hiatt;

Petal Alderman Drew Brickson; Tony Ducker, Petal's current mayor; Hal Marx,

Petal's former mayor; former Petal Police Officer Deriginal Williamson; Petal Police

Officer Jeremy Brown; Petal Police Officer [first name unknown] Lee; and attorney

Rocky Eaton. Eaton represented Petal during 2021 guardianship proceedings in the

Chancery Court of Forrest County, Mississippi, that involved Riley's young son.

Where the form complaint asked Riley to state the basis for federal jurisdiction,

Riley wrote:

> Section C 18, 241-49 impaired with a color of law 1983, improvised with
> 1988, denial of medical attention, tampering evidence, hindering
> prosecution, harassment, excessive force, threatening, failure to
> intervene, illegal detainment.

*Id.* at 4.

Where asked to provide a short and plain statement of his claim, Riley wrote:

> Officers Jeremy Brown and Dereginald Williamson have cause an
> accident that has left me cripple and without surgery Im looseing my
> right side been denied medical attention they tampered with evidence
> in a case to cover what they did. Then harassed me through town denied
> me medical attention then proof the government let me go cripple, cost
> me my child in a court case trying to hinder prosecution. There is so
> much more but my hand hurts.

*Id.* at 5.

Where asked to state the relief he sought, Riley requested "[d]octor visits and

surgery, out of court settlement 250,000 a year for life and 500,000 to start." *Id.*

Riley was ordered to complete a Magistrate Judge's Questionnaire to assist

Riley in the factual development of his claims. Order [3] at 3. Riley completed the

Questionnaire, but his answers did not clarify his claims. A screening hearing was

held on July 27, 2023, where Riley appeared, was questioned, and allowed to explain

his claims. Riley's wordy testimony raised factual allegations spanning three years

and seven months that are chronologically organized and addressed in the merits review section below.

## II. DISCUSSION

### A.  28 U.S.C. § 1915(e)(2) Standard

Riley is proceeding *in forma pauperis*, which subjects his Complaint to preanswer screening and sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2)(B) provides that "the court shall dismiss the case at any time if the court determines that – (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it lacks "an arguable basis in law or fact." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory," and a claim lacks an arguable basis in fact if "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir.2009) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir.1999)).

Whether a complaint fails to state a claim for purposes of 28 U.S.C. § 1915(e)(2)(B) is determined by applying the same standard of review applied to dismissals under Federal Rules of Civil Procedure 12(b)(6). *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). The facts alleged are accepted as true and viewed in the light most favorable to the plaintiff. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a Rule 12(b)(6) motion to dismiss, the Court "may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). If "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (citation omitted).

When screening an *in forma pauperis* complaint under 28 U.S.C. § 1915(e)(2)(B), "the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer." *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990). The Court may consider affirmative defenses sua sponte. *Id.* The Court may refer to matters of public record. *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994)). The Court may consider an *in forma pauperis* plaintiff's responses to a questionnaire and testimony provided at a screening hearing. *Brewster,* 587 F.3d at 768; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). The plaintiff's responses and testimony "become[ ] part of the total filing of the *pro se* applicant." *Eason,* 73 F.3d at 602-03.

4

*Pro se* pleadings are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even under this liberal standard, *pro se* plaintiffs must "plead sufficient facts that, when liberally construed, state a plausible claim to relief . . . ." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014).

B.    Merits Review Under 28 U.S.C. § 1915(e)(2)(B)

1.    Petal Police Department is not a proper party

Riley seeks to hold the Petal Police Department liable. Petal Police Department is not a proper party and should be dismissed. The capacity of a police department to be sued is determined by state law. *See* Fed. R. Civ. P. 17(b)(3). Under Mississippi law, a police department is not a separate legal entity that may be sued but is instead an extension of the city. Miss. Code § 21-17-1(1) (municipalities are distinct legal entities); Miss. Code § 21-21-1, *et seq.* (municipalities may create and fund police departments); *e.g.*, *Handshaw v. Biloxi Police Dep't*, No. 1:19-cv-00821-HSO-JCG, 2020 WL 592338, at *1 (S.D. Miss. Feb. 6, 2020) (dismissing the Biloxi Police Department as a defendant); *Jackson v. City of Gulfport*, No. 1:16-cv-00420-LG-RHW, 2017 WL 651956, at *2 (S.D. Miss. Feb. 16, 2017) (dismissing the Gulfport Police Department as a defendant); *Stovall v. City of Hattiesburg*, No. 2:10-cv-00084-KS-MTP, 2010 WL 1980313, at *2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department as a defendant).

2.    Claims accruing in 2019 are time barred

Riley signed and filed his Complaint on March 8, 2023, which was too late to file either § 1983 or state tort actions based on claims that accrued in 2019. Riley alleges that he was injured twice in 2019 during separate encounters with Officers

Brown and Williamson. Riley seeks medical treatment and money damages because his right hand is closed, fractured, and needs surgery; and he is crippled. The first incident where Riley was injured occurred on August 17, 2019, when Riley burned his right hand because Officer Brown required him to place his hands on the hood of a hot police car. During this encounter, Riley complained that he was being harassed, and Officer Williamson responded, "Oh, you want to see police harassment? Then he stepped in next to [Riley] . . . and said he was going to put some mix in [him]." Riley's right hand, to this day, will not open. Riley accompanied his fiancée Ashley Benge to the hosptial on September 16, 2019, and her doctor looked at his "baked" hand and was able to open it temporarily.

The second incident where Riley was injured occurred on September 17, 2019, when Officers Brown and Williamson caused Riley to fall off his bicycle, which fractured Riley's right hand and crippled him. Riley proceeded directly to Petal Police Department to lodge a complaint. He "went inside the police station" and said, "legally and formally I'm letting you know, I'm tired of the harassment. I'm getting some lawyers." As he left Petal Police Department, Officers Brown and Williamson intercepted him, directed lewd comments toward him, Officer Williamson took a knife from Brown's belt and threatened to cut Riley's bicycle tires, and Officer Williamson brandished scissors and threatened to take a hair sample from Riley's crotch. Riley showed Officer Brown his right hand and tried to open it but could not. Riley told Officer Brown that he needed medical attention.

Riley contends that he has been harassed by Petal Police Department officers because of Petal's former mayor, Marx. According to Riley, while Marx was in office,

6

he sent Petal Police Department officers to harass him. Riley claims Mayor Marx told officers to harass him because Riley "kn[e]w a lot of things that was going on in Petal that shouldn't have been going on." Riley stated that he "challenged [Marx] publicly on a Facebook page. He read it."

On October 15, 2019, Riley appeared at Petal Municipal Court because he was charged with telephone harassment against Jodie Long, his ex-girlfriend and mother of his young son. Officer Williamson was there, and he and Riley exchanged words. On October 30, 2019, Officer Brown responded to a disturbance call at an apartment where Riley lived and threatened to remove Riley because he was not on the lease. On October 31, 2019, Officer Williamson drove by and yelled at Riley as he was attempting to cross the street. Riley responded by telling Williamson he was "suing y'all because of this harassment right here." On November 5, 2019, Officer Williamson yelled from his police car at Riley, asked him, "how was court?," and told him to get out of the street. Riley continued home, and when he saw police officers across the street from his apartment, he went to Petal Police Department to lodge another complaint. Officers Brown, Williamson, and Lee were there. Riley spoke to Officer Lee and told him how he had been injured and was being harassed. Officer Lee told Riley that he could have him arrested for lying about police officers.

On November 19, 2019, Riley pleaded guilty in Petal Municipal Court to telephone harassment against Long. During the hearing, Riley and Officer Brown locked gazes. Riley pointed to his injured hand and told everybody in the courtroom that he was suing Officer Brown for injuring him. Officer Brown responded, "we'll see about that." Riley asserts that Officer Brown then took "them files," left the

7

courtroom with Officer Williamson, and "they took evidence. They took evidence out so nothing could trace back to them." Riley claims the evidence taken included the text message that he sent Long that was the basis for his telephone harassment conviction. Riley calls this text message the "to whom it may concern" text message. Riley wrote and sent the "to whom it may concern" text message but does not have a copy of it. He maintains that the text message contains information that could help him prove how he was harassed and injured. Riley believes Petal Municipal Court should have maintained a copy of the text message in its case files. Riley did not realize that the text message was not in Petal Municipal Court's case files until 2021 when he requested the evidence from his telephone harassment case from the clerk's office there. He intended to use the text message in a guardianship proceeding involving his son.

"[W]here it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed as [frivolous]." *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). In an action brought under 42 U.S.C. § 1983, a federal court must apply the forum state's general statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Mississippi, that period is three years. Miss. Code § 15-1-49; *see Norwood v. City of Mendenhall, Miss.*, 630 F. App'x 245, 249 (5th Cir. 2015). Although state law controls the statute of limitations, "federal law governs when a Section 1983 claim accrues." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cr. 2016); *see Wallace*, 549 U.S. at 388. Under federal law, a Section 1983 claim accrues, and the limitations period begins to run, "the moment the plaintiff becomes

8

aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (quotation and citation omitted). "State law determines whether the statute of limitations may be equitably tolled in § 1983 cases." *Ball v. Hinds Cnty. Dep't of Hum. Servs.*, No. 3:12-cv-756-DPJ-FKB, 2013 WL 228096, at *2 (S.D. Miss. Jan. 22, 2013) (citing *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992)). "Under Mississippi law, to justify tolling of the statute of limitations on equitable grounds, a plaintiff must show '[i]nequitable or fraudulent conduct' on the part of the defendant." *Id.* (citing *Kimball Glassco Residential Ctr., Inc. v. Shanks*, 64 So.3d 941, 948 (Miss. 2011)).

Riley knew that he was injured at the time of each police encounter yet waited more than three years after the 2019 police encounters to file this suit. Riley admits that on September 17, 2019, he "went inside the police station" and said, "legally and formally I'm letting you know, I'm tired of the harassment. I'm getting some lawyers." Riley told Officer Williamson on October 31, 2019, that he was "suing y'all because of this harassment right here." In January 2020, Riley reported being harassed to the district attorney's office and spoke to a detective. By mid-2020, Riley had complained to the attorney general, a United States Congressman, and the FBI. Riley testified that much of his proof could be gleaned from Facebook and provided copies of Facebook posts that he made in October 2021 about the allegations that he now raises in this lawsuit. Pl.'s Exs. [6-1] at 35-50. Yet Riley did not file his Complaint until March 8, 2023. There is no basis for equitable tolling of Riley's §1983 claims accruing in 2019 because "inequitable or fraudulent conduct" on the part of Defendants did not prevent Riley from diligently pursuing his claims.

Even if not time barred, some of Riley's allegations from 2019 do not rise to the level of a constitutional violation. Riley accuses police officers of verbal harassment. "'[M]ere words' or 'idle threats'" by a government official, standing alone, do not rise to the level of a constitutional violation. *Lamar v. Steele,* 698 F.2d 1286, 1286 (5th Cir. 1983). "A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." *Id.*

Riley's claim that Officers Brown and Williamson took evidence from Petal Municipal Court that should have been retained in Petal Municipal Court's case files does not rise to the level of a constitutional violation because "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.,* 438 U.S. 1, 15 (1978); *see Bonnet v. Ward Cty., Tex.*, 539 F. App'x 481, 483 (5th Cir. 2013) (applying *Houchins*, and affirming district court's determination that a landman did not have a constitutionally protected liberty or property interest in accessing county records to conduct title searches). Riley has not claimed to have pursued a Mississippi Public Records Act request, and "any alleged violation of the Mississippi Public Records Act does not implicate a federally protected right." *Bernegger v. Off. of State Auditor of Miss.*, No. 3:12-cv-161-DPJ-FKB, 2012 WL 2573246, at *2 (S.D. Miss. July 2, 2012).

Riley's allegation that police officers often surveil his apartment and him as he rides his bicycle through Petal, standing alone, fails to state a constitutional claim because the constitution does not prohibit surveillance of activities in public view. *See*

*United States v. Knotts*, 460 U.S. 276, 282 (1983); *Katz v. United States*, 389 U.S. 347, 351 (1967).

Any state law tort claims based on 2019 police encounters are governed by either Mississippi's one-year statute of limitation in the Mississippi Tort Claims Act (MTCA), Miss. Code § 11-46-11(3); Mississippi's general three-year statute of limitation for claims for which no other period of limitation is prescribed, Miss. Code § 15-1-49; or Mississippi's one-year statute of limitation for intentional torts, Miss. Code § 15-1-35. Riley filed his Complaint on March 8, 2023, more than three years after the 2019 police encounters supporting his 2019 claims. All federal and state law claims based on 2019 police encounters should be dismissed under 28 U.S.C. § 1915(e)(2)(B) as time barred, or for failure to state a claim.

      3.    <u>Some 2020 claims pass screening</u>

      a.    **Riley has no cognizable claim based on what occurred at a May 29, 2020 Petal alderman's meeting**

Riley attended a Petal alderman's meeting at Petal City Hall on May 29, 2020. Riley went to the podium during a segment for public comment to confront Mayor Marx. Riley said he was not "going to be their secret, like other secrets." He unwrapped his injured hand and held it up. Riley claims Mayor Marx "looks at Jeremy Brown, nods at him. Jeremy Brown gets on his little cell phone and tries to hurry up and get another officer in there to get me called out because he knew what the situation was." Riley admits he was loud and upset when he spoke at the alderman's meeting. Riley was "called out" but not detained or arrested. Riley's allegations about the alderman's meeting fail to provide factual content from which

it could reasonably be inferred that Riley has a plausible §1983 or state law claim based on what occurred there.

      b.    **Riley should be allowed to proceed on the following § 1983 claims accruing in 2020: an excessive force claim against Officer Williamson, a failure to intervene claim against Officer Lee, a civil conspiracy claim against Petal, and a civil conspiracy claim against former Mayor Marx**

Riley claims that Officer Lee, Officer Williamson, and another officer that Riley does not identify came to his apartment sometime between May 29, 2020 and June 10, 2020 to "shut [Riley] up." Officer Lee exited the police car and told Riley that "Marx sent me here, I don't want to hear nothing about no conspiracy." Riley told Officer Lee about his history with Officer Williamson and asked for medical treatment. Riley showed Officer Lee his hand and tried to open it. Lee responded, "you can work it out." Riley told Officer Lee that he had contacted the attorney general, a United States Congressman's office, and the FBI about the harassment. Officer Lee responded with expletives and said that he did not care.

At some point, Riley was standing by a recliner. Riley testified that Officer Williamson "grabs me by the shirt and grabs me by the shirt collar and walks me back and shoves me back in my chair. I went to get up to get away from him. They told me to sit back down." Riley claims that he re-injured his right-hand because it hit the recliner when Officer Williamson shoved him into the recliner. Riley alleges that Officer Williamson used excessive force, and Officer Lee is liable for failing to intervene.

Giving Riley's Complaint the benefit of liberal construction, and accepting his factual allegations as true, he alleges that Officer Williamson used force against him

without provocation, causing him to reinjure an already fractured hand that Williamson knew was injured. Riley has stated enough to advance a §1983 excessive force claim against Officer Williamson in his individual capacity. *See Hamilton v. Kindred,* 845 F.3d 659, 662 (5th Cir. 2017) (plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable"). An officer who witnesses a fellow officer violating someone's constitutional rights may be liable to the victim for failing to intervene if he has the opportunity and means to prevent the excessive force. *Id.* at 663. Riley has stated enough to advance a §1983 failure to intervene claim against Officer Lee in his individual capacity.

As for former Mayor Marx, Riley is attempting to raise a § 1983 civil conspiracy claim. The elements of a § 1983 civil conspiracy claim are "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Brown v. Tull,* 218 F.3d 743 (5th Cir. 2000) (citation omitted). Officer Lee purportedly told Riley when he arrived at the apartment on the day of the alleged excessive force that Mayor Marx had sent him. As proof of Marx's animosity toward him, Riley offered one of his own Facebook posts, where Riley writes, "Is the new mayor going to cover up what happened to Jay Riley he needs surgery from police incident they covering up." [10-1] at 1. A response from an account with the name Hal Marx responded, "yes, he is." *Id.* Riley has stated enough to advance a §1983 civil conspiracy claim against former Mayor Marx.

As for Petal, the governing law is found in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), where the United States Supreme Court held that municipalities

may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*. To prevail against Petal under *Monell*, Riley must prove that "(1) an official policy (2) promulgated by the municipal policy maker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). A decision by a municipal policymaker on a single occasion may in some circumstances be regarded as official municipal policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). A city can be liable for a constitutional violation if its authorized policymaker reviewed and approved the action that constituted the constitutional violation. *Borgognoni v. City of Hattiesburg, Miss.*, No. 2:13-CV-241-KS-MTP, 2016 WL 3031889, at *4 (S.D. Miss. May 25, 2016). Mayor Marx was a policymaker, and Riley has stated enough to advance a *Monell* claim against Petal for §1983 civil conspiracy in connection with Riley's allegation of excessive force occurring sometime between May 29, 2020 and June 10, 2020.

Riley has not stated sufficient factual matter, accepted as true, to advance §1983 claims against current Mayor Ducker, Police Chief Hiatt, and Alderman Brickson. Riley's claim against these Defendants is that "[e]verybody denied me medical attention and they all knew." This falls outside one of the two scenarios in which a supervisory official may be liable under § 1983. Riley has not alleged that these supervisory officials affirmatively participated in the incident or implemented an unconstitutional policy that resulted in the alleged constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). The generic allegations against Mayor Ducker, Chief Hiatt, and Alderman Brickson do not pass screening because Riley is ultimately claiming that these Defendants are vicariously liable, which does not state

14

a § 1983 claim. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Finally, Riley cannot advance state law claims based on the alleged incident of excessive force occurring in 2020. The MTCA, Miss. Code § 11-46-1 *et seq.*, is the exclusive civil remedy against a governmental entity or its employees for the torts of its employees committed in the course and scope of their employment. *Gilmer v. Trowbridge*, No. 3:08-cv-136-TSL-JCS, 2009 WL 4113711, at *2 (S.D. Miss. Nov. 23, 2009) (citing Miss Code §11-46-7(2)). Riley cannot pursue claims falling within the scope of the MTCA because he did not comply with the presuit notice requirement found in Miss. Code §11-46-11(2). Riley was asked at the screening hearing whether he provided written, presuit notice of his claims, and he responded that the 2019 "to whom it may concern" text message underlying his telephone harassment conviction was the presuit notice "from the very beginning." A communication written in 2019 cannot serve as presuit notice for claims arising from an event of excessive force that did not occur until 2020.

State tort claims falling outside the MTCA's scope are time-barred. State law claims for intentional torts have a one-year statute of limitations. *See* Mississippi Code § 15-1-35 (one-year statute of limitations for assault, assault and battery, maiming, false imprisonment, malicious arrest, menace, slander, libel); *Buchanan v. Gulfport Police Dep't*, No. 1:08-cv-1299-LG-RHW, 2016 WL 6083518, at *5 (S.D. Miss. Feb. 3, 2016) ("the one-year statute of limitations applies to civil conspiracy"); *CitiFinancial Mortg. Co., Inc. v. Washington*, 967 So.2d 16, 19 (Miss. 2007) (a "claim for intentional infliction of emotional distress is subject to a one-year statute of

limitations under Mississippi Code Annotated Section 15-1-35"). The alleged incident of excessive force occurred sometime between May 29, 2020 and June 10, 2020, yet Riley waited over two years and eight months later to file his Complaint.

    4.    <u>No 2021 claims pass screening</u>

    a.    **Riley cannot advance claims based on what occurred during 2021 guardianship proceedings in Forrest County Chancery Court**

Riley was the respondent in a 2021 guardianship proceeding in Forrest County Chancery Court titled *Jennifer Eakes v. Jay Riley,* Civil Action No. 21-PR-00237-SM. Jennifer Eakes petitioned for guardianship of Riley and Long's young son. Pl.'s Exs. [6-1] at 26-28. On October 13, 2021, the Chancery Court appointed Eakes as temporary guardian. *Id.* at 22-23. A summons was issued for Riley to appear at a November 17, 2021 hearing. On November 4, 2021, Riley had a Chancery Court clerk issue subpoenas for attendance at the hearing to "The City of Petal MS, Mayors Office, 39465," "The City of Petal MS, Aldermans Office 39465," and "The City of Petal MS, Police Department 39465." *Id.* at 14-15, 30-33, 51-53, 66. Riley had someone leave the subpoenas with a receptionist at Petal City Hall. *Id.* at 31.

On November 10, 2021, Eaton, an attorney representing Petal, entered an appearance in the guardianship proceeding and moved to quash the subpoenas because of failure to address them to a person, improper service, and failure to pay witness and mileage fees. *Id.* at 30-51. Eaton asserted that Riley was using the subpoenas for an illegitimate purpose. *Id.* at 31. As proof, he attached October 2021 posts from Riley's Facebook account that Eaton claimed showed Riley's animosity toward Petal, its officials, and police officers. *Id.* 34-50. Eaton requested a protective

order prohibiting Riley from issuing subpoenas to Petal, its departments, employees, or officials without court approval. *Id.* at 32.

On November 17, 2021, Riley appeared and testified at the hearing. *Id.* at 57-61. The Chancery Court appointed Eakes as the child's guardian. *Id.* The order of appointment provided that Riley had not established a relationship with the child, visited the child, or paid child support. *Id.* at 58. On November 17, 2021, the Chancery Court granted Eaton's motion to quash and for protective order. *Id.* at 67.

In this suit, Riley faults Eaton for causing him to lose his son in the guardianship proceeding. Riley claims Eaton is responsible because he (1) blocked subpoenas to Petal's mayor's office, alderman's office, and police department; (2) raised subjects about Riley that were unrelated to the guardianship proceeding "to make [Riley] look like something [he's] not"; and (3) committed perjury by claiming "he didn't know nothing about [Riley's] case until 2020" and claiming that there were no witnesses to offer because "[a]ll of them were in the courtroom when the judge said what he said about my visitation rights to my child. Judge Bond said it right there in front of all of them. They all could have stood up and said something, but nobody did."

Riley was asked at the screening hearing whether he raised his allegations against Eaton to the presiding Chancellor during the guardianship proceeding. Riley responded, "Yes, sir. It's through Gmail and everything." When asked whether he had appealed the Chancery Court's decision, Riley responded, "yes." When asked the status of the appeal, Riley responded, "Nobody tells me nothing. Nobody does anything."

Eaton's alleged conduct occurred during Chancery Court proceedings where a Chancellor presided, motions were filed, a hearing had, witnesses called, and findings of fact made. Riley should have raised his complaints about Eaton to the Chancellor and challenged any unfavorable rulings through appeal in state court. To the extent that Riley's claims collaterally attack a state court judgment, the Court lacks jurisdiction to hear them because of the *Rooker-Feldman* doctrine. Federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)); *D.C. Ct. of Appeals. v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, the losing party in a state court proceeding is "barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). The *Rooker-Feldman* doctrine applies to claims litigated in state courts and those "inextricably intertwined" with an adjudication by a state court. *Liedtke,* 18 F.3d at 318.

To the extent that Riley's claims against Eaton can be construed as claims falling outside the *Rooker-Feldman* doctrine, state law claims for abuse of process, intentional infliction of emotional distress, civil conspiracy, and defamation are time-barred because of the one-year limitations period for intentional torts in Mississippi Code § 15-1-35. Riley did not file his Complaint until over fifteen months after the November 2021 events involving Eaton. *See Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 840-41 (S.D. Miss. 2011) ("there is no reasonable

18

possibility of recovery on claims for abuse of process, intentional infliction of emotional distress and conspiracy because these claims are all barred by the applicable statutes of limitations"). As for Riley's allegation that Eaton committed perjury, Riley does not state a claim because individual citizens do not have a right to the prosecution of alleged criminals. The decision of whether to prosecute rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979).

> **b.    Riley cannot advance claims based on his 2021 arrest for nonpayment of Petal Municipal Court criminal fines**

On November 17, 2021, after Riley left Forrest County Chancery Court, he was arrested on a Petal Municipal Court warrant for failing to pay his telephone harassment fine in full and was incarcerated from November 17-19, 2021. Pl.'s Ex. [6-1] at 64. Riley claims his arrest was a false arrest because the Rolling Jubilee Fund, a 501(c)(4) nonprofit organization, paid his fine prior to his arrest.

Riley provided the Petal Municipal Court order sentencing him. [6-1] at 16. The order shows that Riley was sentenced to a fine amount of $200.00 plus assessments of $213.75 and placed on reporting probation under the supervision of Court Programs, Inc. until the fine was paid. *Id.* at 16. Riley provided the contract that he executed with Court Programs, Inc., which shows that he agreed to pay a $10.00 intake fee and $30.00 monthly fee towards the cost of supervision. *Id.* at 63.

Riley's only alleged facts supporting that he was illegally arrested are in a letter dated October 6, 2021 from Rolling Jubilee Fund that provides, "We just got rid of some of your private probation debt!" *Id.* at 11. The letter indicates that Rolling Jubilee paid $90.00 to Court Programs, Inc. to cover Court Program, Inc.'s charges

for supervising Riley's probation. *Id.* The letter does not show that Rolling Jubilee Fund paid towards Riley's criminal fine. Riley's claim that he was falsely arrested on November 17, 2021 is frivolous because it lacks an arguable legal basis in fact.

C.    <u>Leave to Amend Should Not Be Allowed</u>

1.    <u>Officers Klein, Marino, and Locke should not be added as Defendants</u>

At the screening hearing, Riley mentioned police officers that he did not name as Defendants: Officers Klein, Marino, and Locke. He did not provide their first names. Riley stated that he intentionally did not name Officer Klein as a Defendant because "I was going to try and do it in another case on it." Riley accuses Officer Klein of "[p]rying my hand open, trying to pry my hand open, knowing I needed surgery." He testified that this interaction occurred on November 17, 2021 when Officer Klein stopped Riley as he was leaving Chancery Court. Riley stated that the incident occurred in front of Officers Marino and Locke. Riley asserts that Officer Klein knew Riley was injured because he read Riley's Facebook page, "[a]nd he still stuck his fingers, after he took my medical brace, he took the metal part in there and never gave it back. He took it out of there; never gave it back. And then he stuck his fingers in mine and started yanking on them. And I ended up in a sling."

Officers Klein, Marino, and Locke should not be added as Defendants, first, because Riley did not name them in the Complaint. Riley intended to pursue the claim about Officer Klein "prying his hand open" in a separate suit. Second, a plaintiff may join defendants in a single action if the right to relief "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The only claims that should survive screening arise from an alleged incident of excessive force by Officer Williamson in mid-2020. An incident involving different officers and occurring nearly a year and a half later in November 2021 should not be added to this suit.

2.   <u>A claim against Chief Hiatt accruing in April 2023 should not be added to this suit</u>

Riley was asked at the screening hearing why he sued Police Chief Hiatt. Along with generally accusing Chief Hiatt of denying him medical treatment when "they all knew," Riley passingly stated that he was suing Chief Hiatt for "[j]ust the one illegal detainment." Asked when this detainment occurred, Riley stated that it occurred in April 2023 after he filed this lawsuit in March 2023. Riley provided no facts about this encounter, and he should not be allowed to add a claim based on yet another police encounter, this one occurring after he filed his Complaint. A claim against Chief Hiatt accruing in April 2023 should not be combined with 2020 claims not involving Chief Hiatt.

3.   <u>Riley has had ample opportunity to plead his "best case"</u>

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint, but leave is not required when he has pleaded his "best case." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). Riley had the opportunity to provide facts supporting his claims in his Complaint, via his answers to the Magistrate Judge's Questionnaire, and at the screening hearing. The option to object to this Report and Recommendation provides Riley an opportunity to attempt to cure the deficiencies noted in this Report and Recommendation. Unless Riley can explain through his objections how he could

21

cure the defects in his pleading, further leave to amend the claims recommended for dismissal is not warranted. *See, e.g., Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) ("A court should freely give leave to amend when justice so requires . . . but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave.") (citations omitted).

### III. CONCLUSION

It is recommended that Riley be allowed to advance only the following claims, all of which arise from an alleged incident of excessive force by Officer Williamson occurring sometime between May 29, 2020 and June 10, 2020: a § 1983 civil conspiracy claim against Petal; a § 1983 civil conspiracy claim against former Mayor Marx, in his individual capacity; a §1983 excessive force claim against Officer Williamson, in his individual capacity; and a § 1983 failure to intervene claim against Officer Lee, in his individual capacity. All other claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within 14 days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party must file the objections with the Clerk of the Court

and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendation contained in this report will bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within 14 days after being served with a copy will bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that the district court has accepted and for which there is no written objection. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996); *see also* Fed. R. Civ. P. 72(b) advisory committee's note (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**SO ORDERED**, this 31st day of May 2024.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE