**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JAY RILEY**                                                                                    **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO.: 2:23-CV-37-HSO-BWR**

**CITY OF PETAL; HAL MARX; DEREGINAL
WILLIAMSON; UNKNOWN LEE**                                      **DEFENDANTS**

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Defendants the City of Petal, Hal Marx, Dereginal Williamson, and Unknown Lee ("Defendants") respectively submit this Memorandum in Support of Motion for Summary Judgment, as follows:

**INTRODUCTION**

Pro se Plaintiff Jay Riley sues Defendants the City of Petal, Hal Marx, Dereginal Williamson[1], and Unknown Lee[2] under 42 U.S.C. § 1983, alleging federal constitutional claims of excessive force and conspiracy.[3] Particularly, Riley brings an excessive force claim against Williamson, in his individual capacity, and a failure to intervene claim against Lee, in his individual capacity. Report and Recommendation [14] at 22. Riley also brings § 1983 conspiracy claims against Marx, in his individual capacity, and the City. *Id.* Because Riley cannot establish an underlying constitutional violation, overcome the clearly-established prong of qualified immunity, or meet the additional hurdle of municipal liability, this case must be dismissed under Federal Rule of Civil Procedure 56.

---

[1] Defendant "Dereginal" Williamson refers to Officer Dereginald Williamson.

[2] Defendant "Unknown Lee" refers to Officer Joe Lee.

[3] These constitute Riley's remaining claims, as the majority of his claims have already been dismissed by this Court. Order [16].

## RELEVANT FACTUAL BACKGROUND

Riley's deposition testimony regarding the alleged excessive force incident, which forms the basis of all his remaining claims, is notably unclear.[4]  To better understand the alleged excessive force incident and provide context about the remaining claims, Defendants refer to the Magistrate Judge's Report and Recommendation, which outlines a series of interactions that allegedly occurred in 2019 between Riley and the Petal Police Department.[5]

### A.    Series of Interactions Occurring in 2019

During his screening hearing, Riley claimed that he was injured twice in 2019 during separate encounters with Officer Williamson and Officer Jeremy Brown.[6]  The first encounter took place on August 17, 2019, during which Riley claims he sustained an injury to his right hand when Officer Brown allegedly required him to place his hand on the hood of a hot police car.[7]  During this encounter, Riley complained that he was being harassed, to which Officer Williamson allegedly responded, "Oh, you want to see police harassment? Then he stepped in next to [Riley] . . . and said he was going to put some mix in [him]." [8]  Riley contended that his right hand would no longer open as a result of this incident.[9]

The second encounter where Riley was allegedly injured occurred one month later, on September 17, 2019.[10]  According to Riley, Officer Brown and Officer Williamson caused him to

---

[4] Defendants contest the occurrence of the alleged excessive force incident in its entirety. However, in light of the summary judgment standard, which mandates that the Court view disputed facts in the light most favorable to Riley, Defendants' presentation of the facts adheres to this requirement.

[5] As explained more fully below, this Court dismissed all claims arising from these interactions occurring in 2019 as time barred.

[6] Report and Recommendation [14] at 5–6.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.*

[10] *Id.*

fall off his bicycle, allegedly resulting in a fracture to his right hand that left him crippled.[11]  In response, Riley went directly to the Petal Police Department to file a complaint.[12]  Inside the station, Riley declared, "I'm tired of the harassment. I'm getting some lawyers."[13]  Upon exiting the police department, Officer Brown and Officer Williamson allegedly confronted Riley and directed lewd remarks at him, with Officer Williamson allegedly taking a knife from Officer Brown's belt and threatening to slash the tires of Riley's bicycle.[14]  Riley also claimed that Officer Williamson brandished scissors and threatened to take a hair sample from Riley's crotch.[15]

On October 15, 2019, Riley appeared at the Petal Municipal Court because he was charged with telephone harassment against his ex-girlfriend.[16]  During this court appearance, Riley and Officer Williamson allegedly engaged in a verbal exchange.[17]  Later, on October 30, 2019, Officer Brown responded to a disturbance call at Riley's apartment and threatened to evict him due to his name not being on the lease.[18]

The following day, October 31, 2019, Officer Williamson allegedly yelled at Riley while he was crossing the street.[19]  Riley responded, telling Officer Williamson he'd sue him for harassment.[20]  On November 5, 2019, Officer Williamson allegedly again confronted Riley from his patrol car, asking Riley about court and instructing him to leave the street.[21]  Riley then visited

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 7.

[17] *Id.*

[18] *Id*

[19] *Id.*

[20] *Id.*

[21] *Id.*

the police department to file another complaint.[22] There, he allegedly encountered Officer Brown, Officer Williamson, and Officer Lee.  Riley informed Officer Lee about his hand injury and ongoing harassment, to which Officer Lee allegedly threatened Riley with arrest for making false claims about the police.[23]

On November 19, 2019, Riley entered a guilty plea in Petal Municipal Court for the telephone harassment charge involving his ex-girlfriend.[24]  During the hearing, Riley and Officer Brown exchanged looks, with Riley pointing to his injured hand and announcing his intention to sue Officer Brown for the injury.[25]  Officer Brown reportedly replied, "we'll see about that."[26] Riley claims that following this exchange, Officer Brown, accompanied by Officer Williamson, removed certain files from the courtroom, allegedly including the text message that formed the basis of Riley's conviction.[27]

### B.    Excessive Force Incident Occurring in Spring of 2020, Which Forms The Basis For All Remaining Claims In This Case

In the early evening, on the day in question, sometime in March 2020, Riley claims that he was at his apartment in Petal, Mississippi, preparing dinner for his neighbors.[28]  Not long thereafter, Officers Lee and Williamson of the Petal Police Department arrived at the scene, despite

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 8.

[28] Exhibit A, Excerpts of Plaintiff's Deposition Transcript, at 74–75.

there being no disturbances or allegedly calls for police assistance.[29]  This prompted Riley to exit his apartment and meet Officer Lee and Officer Williamson outside. [30]

Upon arrival, Officer Lee reportedly instructed Riley not to discuss any conspiracies, as Officer Williamson stood behind Riley, and to which Riley responded: "I told [Officer] Lee if he's not going to do his job, like I can by rights, if you ain't going to do your job then I don't need you. If you ain't going to do your job then I don't need you."[31]  Riley then walked back inside his apartment "fussing" and "cursing."[32]

Hearing Riley inside, Officer Lee asked Riley to return outside.[33]  Riley began to comply, but "started fussing again."[34]  According to Riley, the officers then entered his apartment and stood with him in his living room.[35]  During a brief conversation with the officers, Riley attempted to "show[] the officer[s] exactly what happened in the [municipal] courtroom" in 2019.[36]  At that moment, he claims that Williamson "grabbed [him] by [his] collar and shoved [him] back."[37]  As this occurred, Riley "went to grab up" on Williamson but then "dropped [his] hands."[38]

---

[29] *Id.* at 80–82.

[30] *Id.* at 90.

[31] It is unclear what job Riley wanted Officer Lee to do.  *Id.* at 80.

[32] *Id.* at 91–92.

[33] *Id.* at 97.

[34] *Id.*

[35] A third officer had arrived on scene by this point. *Id.* at 98.

[36] Riley seems to be referencing his interaction with either Officer Williamson or Officer Brown in the courtroom during 2019.  *Id.*

[37] *Id.* at 99.

[38] *Id.*

PD.50720631.1

Riley claims he was pushed into his nearby recliner, and as he "tried to catch [him]self," he placed his allegedly already injured right hand on the recliner's right armrest.[39]  He did not fall on the ground, nor did Willaims fall on top of him.[40]

During his deposition, when questioned about whether he was injured or reinjured as a result of the incident, Riley stated that his hand "hurt" but he was unsure and did not know if he had sustained any new injury.[41]  Riley also acknowledged that he did not seek medical attention, visit an emergency room, take any medications, or consult with any medical professional following the incident.[42]

## RELEVANT PROCEDURAL HISTORY

Roughly three years later, on March 8, 2023, Riley filed a pro se complaint against "Petal MS City Government" and "Petal Police Department" and named others within the complaint. Compl. [1] at 1.  He was later ordered to complete a Magistrate Judge's Questionnaire to assist in the factual development of his claims.  Order [3] at 3.  A screening hearing was held on July 27, 2023, where Riley appeared and further explained his claims.

On May 31, 2024, the Magistrate Judge entered a Report and Recommendation, recommending all claims be dismissed except the excessive force and § 1983 conspiracy claims arising from the 2020 interaction at his apartment.  Order [14] at 22.  On October 9, 2024, this Court adopted the Magistrate Judge's Report and Recommendation, and the Clerk was directed to issue waivers of service to Defendants the City of Petal, Hal Marx, Dereginal Williamson, and Unknown Lee, which were executed.  Order [16]; Waivers [19, 20, 21, 22]; Executed Waiver [23].

---

[39] *Id.* at 109.

[40] *Id.* at 110–111.

[41] *Id.* at 119.

[42] *Id.*

Defendants answered the complaint on December 19, 2024, and served pre-discovery disclosures on Riley.  Answer [26]; Def.'s Pre-Discovery Disclosures [28].  Riley never served initial disclosures on Defendants.

Discovery then ensued.  On July 1, 2025, Defendants served Riley with interrogatories, requests for production, and requests for admission.[43]  Notices [30, 32, 33].  As of the date of this writing, Riley has not responded to any of Defendants' discovery requests, including Defendants' requests for admission.  Defendants deposed Riley on August 11, 2025.  Notice [25].  Riley did not take any depositions or conduct any discovery in this case.  Dismissal of all claims is now requested under Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  A fact is material only if it is essential to the plaintiff's cause of action under an applicable theory of recovery and the plaintiff could not prevail without it.  *Celotex v. Cartrett*, 477 U.S. 317, 322–23 (1986).  The movant's burden is to merely point out the absence of evidence supporting the nonmovant's case.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Once the movant meets this burden, the nonmovant must go beyond the pleadings and "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  Allegations without substance will not defeat summary judgment.  *Celotex*, 447 U.S. at 321.  If the nonmovant fails to meet this burden, the motion for summary judgment must be granted.  *Stults*, 76 F.3d at 656–57

---

[43] Exhibit B, Defendants' Interrogatories, Requests for Production, and Requests for Admission; *see also* Exhibit C, Email (dated July 1, 2025) (Riley acknowledged receipt of Defendants' discovery requests via email on July 1, 2025. Defendants also mailed a hard copy of the discovery requests to Riley.).

PD.50720631.1

(citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

## ARGUMENT & AUTHORITIES

Riley advances claims, through 42 U.S.C. § 1983, that Officer Williamson excessively used force against him on the day in question and Officer Lee failed to intervene.  Riley also claims that the City and Marx conspired to use excessive force.  None have merit.

The legal framework that applies to Riley's claims is well-settled.  For there to be liability against the City, Riley must show that (1) a violation of a federal right occurred and that (2) a governmental policy or custom was the moving force behind the violation.  *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  For there to be personal liability against Marx, Williamson, or Lee, Riley must overcome qualified immunity, meaning he must show that (1) a violation of a federal right occurred and (2) the individual defendants' actions were objectively unreasonable under clearly established law.  *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

Riley's claims are deficient in their totality.  Most fundamentally, there can be no liability against any defendant because there is no evidence of a constitutional violation.  Moreover, even if Riley could show a constitutional violation, there is still no liability because he cannot establish a basis for municipal liability against the City or objectively unreasonable conduct under the clearly-established-law prong of qualified immunity against any individual defendant.  Each deficiency is addressed in turn.

## I.      Riley cannot establish any underlying constitutional violation.

### A.      Excessive Force

Riley asserts an excessive force claim against Officer Williamson, in his individual capacity.  To bring § 1983 excessive force claim, a plaintiff must demonstrate (1) an injury, (2)

resulting directly and only from excessive force, (3) that was objectively unreasonable. *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018). The Supreme Court has long reminded that not every use of force, even if it may later seem unnecessary in hindsight, violates the Constitution. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.)

Riley cannot establish an underlying constitutional claim of excessive force for four different reasons. The first two reasons are interrelated. First, because Riley failed to respond to Defendants' first request for admission, Riley admitted that Officer Williamson did not use excessive force against him on the day in question and that his allegations are baseless. Second, because Riley failed to respond to Defendants' second request for admission, his claim is barred by the statute of limitations. Third, there is an absence of evidence that Riley was injured or reinjured as a result of the incident. Fourth, Riley cannot show that Williamson acted objectively unreasonably.

<u>Failure to Respond to Requests for Admission</u>. During this case, Riley has claimed that Williamson used force against him when he was pushed into a recliner. *E.g.*, Report and Recommendation [14] at 12. Defendants deny that this interaction took place, which is supported by Plaintiff's failure to respond to his request for admissions. Because Riley failed to respond to the requests for admission, his admissions must be admitted pursuant to Federal Rule of Civil Procedure 36.

Federal Rule of Civil Procedure 36 provides that "[a] matter is admitted unless . . . the party to whom the request is directed serves on the requesting party a written answer of objection[.]" "Rule 36's mandate is self-executing; in other words, a failure to answer or object to a request for admission within thirty days . . . constitutes an automatic admission and a court order deeming the

request is admitted is unnecessary." *Hicks v. Gilchrist Construction Co., L.L.C.*, No. 19-01266, 2020 WL 13158070, at *1 (W.D. La. April 16, 2020).  Notably, this rule "applies equally to *pro se* parties." *Carlisle v. Elite Trucking Servs., LLC*, No. 1:16-CV-257-JCG, 2017 WL 3653800, at *5 (S.D. Miss. July 6, 2017); *see also Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (noting that a pro se party "acquires no greater rights than a litigant represented by lawyer," and instead "acquiesces in and subjects [her]self to the established rules of practice and procedure").

In *Poon-Atkins v. Sappington*, No. 21-60467, 2022 WL 102042 (5th Cir. Jan. 10, 2022), *cert. denied*, 143 S. Ct. 93 (2022), *reh'g denied*, 143 S. Ct. 515 (2022), a pro se plaintiff was served with requests for admissions by the defendants, which addressed the plaintiff's claims, in addition to his right to recovery in the action.  *Id.* at 1.  The plaintiff failed to respond to the defendants' requests for admissions and, after some time, the defendants filed a motion for summary judgment, asserting that the plaintiff's failure to respond to the requests for admissions deemed all requests admitted.  *Id.*  The district court granted summary judgment and, in doing so, expressed "sympath[y]" for the plaintiff as a pro se litigant but also recognized that Federal Rule of Civil Procedure 36 "unambiguously" requires dismissal, given the plaintiff's failure to respond to the defendants' admissions requests.  *Id.* (alteration in original).

On appeal, the Fifth Circuit upheld the district court's dismissal of the plaintiff's action, given her failure to timely respond to the defendants' admission requests:

> Poon-Atkins' failure to respond to the defendants' requests for admissions means that the matters are deemed admitted. Those deemed admissions thus conclusively established that she failed to yield the right-of-way to Sappington, and that her "negligence was the sole, proximate cause of the subject accident." With those admissions, Poon-Atkins could not prove the essential elements of any of her claims, and thus there was no genuine dispute that the defendants were entitled to summary judgment.

*Id.* at 2.  In doing so, the Fifth Circuit explained that it has "applied rule 36(b) equally and consistently to represented and pro se parties alike, and [the court has] refused to overlook a party's disregard for deadlines regardless of that party's status."  *Id.* (citing *Hill v. Breazeale*, 197 F. App'x 331, 337 (5th Cir. 2006)).

Similarly, here, Defendants served three requests for admission on Riley, which were as follows:

> **REQUEST FOR ADMISSION NO. 1:** Admit that your allegations regarding Officer Lee, Officer Williamson, and an additional officer visiting your apartment and pushing you into a recliner are false and untrue.

> **REQUEST FOR ADMISSION NO. 2:** Admit that your allegations regarding Officer Lee, Officer Williamson, and an additional officer visiting your apartment and pushing you into a recliner, if true, occurred before March 2020.

> **REQUEST FOR ADMISSION NO. 3:** Admit that Mayor Marx did not conspire to violate your constitutional rights.

Exhibit B at 7; *see also* Exhibit C (evidencing Riley's receipt of the requests for admission).[44]

Rule 56(c) specifies that "admissions" can be an appropriate basis for granting summary judgment.  FED. R. CIV. P. 56(c)(1)(A); *e.g.*, *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001).  "A

---

[44] Riley has not challenged Defendants' requests under Rule 36, but, out of an abundance of caution, Defendants' requests for admission constitute proper requests.  Rule 36 "allows litigants to request admissions as to a broad range of matters including ultimate facts, as well as applications of law to fact."  *In re Carney*, 258 F.3d at 419.  "Requests for purely legal conclusions . . . are generally not permitted."  *Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015) (citation omitted).  Here, Defendants requests do not call for pure legal conclusions, they address facts or application of law to facts.

For instance, the first request seeks to clarify whether the specific factual allegations made by Riley about the officers' actions are accurate and addresses the veracity of the Riley's claims, which are factual in nature.  The request is also focused on the factual occurrence (or non-occurrence) of a specific event—officers visiting the apartment and pushing the plaintiff into a recliner.  It does not ask for a legal conclusion but rather a factual admission or denial of the event.

The second request seeks to establish the timeline of the alleged events, which is a factual matter.  Determining when an event occurred is a question of fact, not a legal conclusion, and has legal implications under the statute of limitations.

While the third request involves a legal element of § 1983 conspiracy claim, this request is focused on whether there is a factual basis for Riley's claim that Mayor Marx engaged in specific actions or communications constituting a conspiracy.  *See, e.g.*, *Hernandez v. Smith*, 793 F. App'x 261, 266 (5th Cir. 2019) ("Although the requests go to the ultimate question of Defendants' liability, nothing in the text of Rule 36 prohibits such requests.).

party who makes an admission, whether express or by default, is bound by that admission for summary judgment purposes—not even contrary evidence can overcome an admission at the summary judgment stage." *Stuart v. Russell*, No. 3:21-CV-1231, 2024 WL 3461066, at *3 (W.D. La. July 18, 2024) (citing *In re Carney*, 258 F.3d at 420). "Instead, the proper course for a litigant that wishes to avoid the consequences of failing to timely respond to Rule 36 requests for admissions is to move the court to amend or withdraw the default admissions." *Id.*

Accordingly, by failing to respond to Defendants' first request for admission, Riley has admitted that Officer Williamson did not use excessive force against him on the day in question and that his primary allegations are false. Considering this undisputed fact, Riley cannot establish an underlying claim of excessive force.

<u>Statute of Limitations</u>. Furthermore, by failing to respond to Defendants' second request for admission—and thus admitting that the incident, even if true, "occurred before March 2020," Riley's excessive force claim against Williamson is time-barred.

"The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). In Mississippi, it's three years. Miss. Code § 15-1-49; *e.g.*, *Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12-CV-229-TSL-MTP, 2013 WL 286365, at *6 (S.D. Miss. Jan. 24, 2016).

Unlike the limitations period itself, accrual of the § 1983 claim is governed by federal law: "Under federal law, the statute of limitations under § 1983 begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Edmonds v. Oktibbeha County*, 675 F.3d 911, 916 (5th Cir. 2012)). Awareness involves two components: (1) "the existence of the injury" and (2) "causation, that is,

the connection between the injury and the defendant's actions." *Piotrowski*, 237 F.3d at 576.

By failing to respond to the second request, Riley admitted that the alleged excessive use of force "occurred before March 2020." Riley filed the instant lawsuit on March 8, 2023. Compl. [1]. As a result, his excessive force claim is time-barred. *See, e.g.*, *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, n.18 (5th Cir. 2002) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible.").

<u>No Injury</u>. Alternatively, Riley's excessive force claim must be dismissed because he lacks the necessary evidence to substantiate the essential elements of his claim. Beginning with the first element, Riley cannot meet the low bar of showing that he suffered any injury as a result of the incident. *See, e.g.*, *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) ("[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."). Namely, during his deposition, Riley could not articulate any injury that occurred as a result of the alleged force:

> Q.    I know you were injured before the recliner. We spoke about that. Were you injured because of the recliner?
>
> A.    It hurt.
>
> Q.    I know but did you suffer any new injury?
>
> A.    I don't know. I've been -- I tried to get help but nobody -- everybody refused me. I called the police department. You know what they would tell me? We're 9 -- 911.
>
> Q.    Did you go to the emergency room?
>
> A.    No, I didn't go to the emergency room. I was denied medical in the -- the second day being locked up.

13

Q.    Did you take any medications?

A.    No, sir, I don't take meds. I don't like meds.

Q.    All right. Did you see a doctor?

A.    No, I couldn't. I was being blocked.

Exhibit A at 119; *see, e.g.*, *Salinas v. Loud*, No. 22-12248, 2024 WL 140443, at *2 (5th Cir. Jan. 12, 2024) ("Courts may look to the severity of a plaintiff's injury to determine whether the force was excessive."); *see also Francois v. City of New Roads*, 459 F. App'x 475, 478 (5th Cir. 2012) (no excessive force where plaintiff suffered only minor injuries); *Segura v. Jones*, 259 F. App'x 95, 103–04 (10th Cir. 2007) (rejecting excessive force claim where a 370-pound officer pushed a female shoplifting suspect "against the wall in order to place the handcuffs on her" causing suspect's face to hit the wall).

Reasonable Force.  As to the second and third elements, Williamson's alleged use of force was objectively reasonable under the circumstances.  To "gaug[e] the objective reasonableness of force used by a law enforcement officer, [this Court] must balance the amount of force used against the need for force."  *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (quotation omitted).  In *Graham v. Connor*, the Supreme Court delineated three considerations for courts to examine when analyzing the reasonableness of the force used, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  490 U.S. at 396; *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (holding that the first two *Graham* factors are "less salient" and that qualified immunity can be found even when only one factor weighs in favor of the officer).

Here, Riley testified that he was "fussing" and "cursing" prior to Williamson's alleged use

14

of force.  Exhibit A at 97.  He also testified that, immediately prior to the force, he "was showing the officer[s] exactly what happened in the courtroom" and that is when Williamson allegedly grabbed and pushed him.  *Id.* at 98–99.  Thus, it was the combination of these events that allegedly prompted Williamson to use minor force against Riley.

Notably, courts have rejected excessive force claims under far worse circumstances than those presented in this case.  Take *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) for example.  In that case, the plaintiff was pulled over for a minor traffic offense and given a sobriety test.  *Poole*, 691 F.3d at 625–27.  After the plaintiff passed the test, one of the officers on the scene began to "verbally threaten and challenge him."  *Id.*  The plaintiff, in response, raised his hands and invited the officer to strike him.  *Id.*  The officers then attempted to place the plaintiff under arrest, but he "backed away" and questioned their actions.  *Id.*  In turn, "two officers twisted [the plaintiff] around and pressed him against the side of his truck."  *Id.*  While one of the officer's held the plaintiff's arm behind his back, the other officer "tasered [the plaintiff] repeatedly."  *Id.*  One of the officers then reached for the plaintiff's right arm, but the plaintiff verbally and physically resisted the officer's command for the plaintiff to give it to him, at which point the officer again tasered the plaintiff.  *Id.*  Thereafter, the plaintiff climbed on his truck, laid on his back, and screamed that the officers had broken his arm.  *Id.*  The officers again tried to detain the plaintiff, but he continued to resist by kicking one of the officers.  *Id.*  The plaintiff eventually was held in place by one officer, and the other officer flipped him to the ground, yanked his arms, and handcuffed him.  *Id.*  The end result was that the plaintiff suffered a dislocated shoulder and permanent disabilities to his left arm and hand.  *Id.*

For each of these independent reasons , Riley cannot establish an underlying constitutional claim of excessive force against Williamson.

### B.    Failure to Intervene

Riley brings a failure to intervene claim against Officer Lee.  "A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force."  *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013) (citation omitted).  As explained above, this claim must be dismissed because Riley admitted that his underlying excessive force claim was baseless and because his excessive force claim is time-barred.

Alternatively, to overcome summary judgment, Riley must prove that Officer Lee "kn[ew] that a fellow officer [was] violating" his constitutional rights, had a reasonable opportunity to prevent it, and chose not to act.  *Whitley*, 726 F.3d at 646.  The events appear to have occurred quickly.  Moreover, Riley lacks evidence showing that Officer Lee had a reasonable opportunity to prevent Williamson's alleged actions and then chose not to act.  Exhibit A at 97–99.  For these reasons, Riley cannot establish a failure to intervene claim against Officer Lee.

### C.    Conspiracy

Riley claims that Marx, the former Mayor of the City of Petal, conspired with the officers to deprive him of this civil rights.  This claim must be dismissed at the outset because Riley cannot establish an underlying claim of excessive force and admitted in the request for admission that Marx did not conspire against him.  *See, e.g.*, *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No deprivation, no § 1983 conspiracy.").

Alternatively, Riley lacks evidence demonstrating that Marx conspired with the officers to use excessive force.  To succeed on a § 1983 conspiracy claim, a plaintiff must prove two things: first, "the existence of a conspiracy involving state action," and second, "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  *Id.*  Regarding the first

element, Riley must prove that the defendants agreed to commit an illegal act. *Thomas v. New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982). In other words, Riley must develop facts that evince "a preceding agreement, not merely parallel conduct that could as well be independent action." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Riley's § 1983 conspiracy claims are flawed due to the absence of both direct and circumstantial evidence indicating that Marx reached any agreement with Williamson, or any other officer, to use excessive force against him or violate any constitutional right. Indeed, there is no evidence even suggesting that Marx spoke to Williamson or Lee about Riley. Furthermore, Riley lacks any evidence demonstrating that Marx was, or is currently, even aware of the alleged incident. These evidentiary gaps are fatal to his conspiracy claim.

Additionally, this claim must be dismissed under the single-entity doctrine. In *Thompson v. McGehee*, 761 F. Supp. 3d 937, 950 (N.D. Tex. 2025), the plaintiff claimed that Mayor, Police Chief, and two police officers conspired with each other to violate her constitutional rights. In reviewing the legal sufficiency of the claim, the court concluded that the City, as a single legal entity, could not conspire with itself, noting that "[a]ll the defendants worked for the City and were acting in their capacity as city officials or employees." *Id.* at 951. In response, the plaintiff attempted to argue that the single-entity doctrine should apply only to individual departments rather than the entire city. *Id.* But the court dismissed this argument, finding that the plaintiff provided no legal precedent for this claim and emphasizing that the necessary functional overlap between city officials and departments supported the application of the single-entity doctrine. *Id.*

In doing so, the district court also acknowledged that an "exception to the intracorporate conspiracy doctrine exists where corporate employees act for their own personal purposes." *Id.*

(citation omitted).   But this "requires a showing of 'an interest that was truly independent' of any interest of the City."  *Id.* (citation omitted).   To this end, the plaintiff argued that "the defendants all had reason to have a personal animus against her because her 'public criticism' of them was 'unrelenting.'"  *Id.*  Yet the court again disagreed, finding that "extending the doctrine to where the plaintiff can prove the defendant had reason to dislike them without more would swallow the doctrine."  *Id.*; *see also Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009) ("[P]ersonal bias or prejudice alone[] does not support application of the exception; rather there must be some other personal interest or stake alleged on the part of the individual defendants.").

Like *Thompson*, Riley cannot overcome the single-entity doctrine, as Riley lacks evidence showing that Marx bore personal animus against him.  Even if Riley could show that Marx bore personal animus, this wouldn't be enough to defeat summary judgment.  Riley must also put forth evidence suggesting that Marx bore an interest truly independent of an interest of the City and that the use of excessive force was the underlying reason for the conspiracy.

For each of these reasons, Riley's conspiracy claim against Marx must be dismissed.

## II.    Williamson, Lee, and Marx are nevertheless entitled to qualified immunity.

Even if Riley could demonstrate a constitutional violation, the individual defendants are still entitled to dismissal on qualified immunity grounds.  The Fifth Circuit has held that "[t]he qualified-immunity doctrine makes" obtaining "money damages from the personal pocket" of a city official "difficult in every case."  *Morrow*, 917 F.3d at 874.  In that same opinion, the panel explained that qualified immunity presented a "heavy burden" for plaintiffs and that the denial of qualified immunity is an "extraordinary remedy."  *Id.* at 874, 876.

Determining whether a plaintiff has satisfied his or her qualified-immunity burden involves

two steps: (1) a nomination phase and (2) a qualification phase. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). Ultimately, qualified immunity "'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citation omitted).

And the Fifth Circuit has applied these obligations to a pro se party. *E.g.*, *Garcia v. Bermea*, *Garcia v. Bermea*, No. 23-50871, 2024 WL 3326088, at *1 (5th Cir. July 8, 2024) (affirming district court grant of summary judgment where pro se plaintiff did "not meet the heavy burden of establishing that 'relevant precedent "has placed the constitutional question beyond debate."'" (citation omitted)).

Nomination Phase. *Vann v. Southaven* illustrates the nomination phase. There, the panel reversed a grant of qualified immunity on a Fourth Amendment claim due to perceived factual disputes. *Vann v. Southaven*, 884 F.3d 307, 307 (5th Cir. 2018). After re-hearing, however, the panel's opinion was vacated, and the new opinion, recognizing that "[i]t is the plaintiff's burden to find a case in [her] favor," reinstated qualified immunity, stating that the plaintiff had "cited nary a pre-existing or precedential case . . . showing specific law on point." *Id.* at 310.

Following *Vann*, countless decisions from the Fifth Circuit have highlighted the plaintiff's obligation of pointing to specific case. *E.g., Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (explaining that "a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated the" Constitution) (emphasis in original; quoted Supreme Court case omitted).

These decisions are consistent with the rule in other Circuits. *E.g., Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) ("In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the plaintiff maintains.") (emphasis added; quoted case omitted).

<u>Qualification Phase</u>.  Once a particular case has been identified, the next step is to determine if the nominated case qualified as "clearly established law."  This qualification determination involves inquiry into whether the identified case is both "authoritative" and "specific."  *District of Columbia v. Wesby*, 538 U.S. 48, 65 (2018) (reversing the D.C. Circuit for "not follow[ing]" the sub-steps).

Any nominated case must be "authoritative" precedent.  Although the Supreme Court has never said what cases constitute "authoritative" precedent, the Fifth Circuit, sitting en banc, has.  Those include: (1) Supreme Court decisions; (2) Fifth Circuit decisions; and (3) "a robust consensus of persuasive authority."[45]  *Morgan*, 659 F.3d at 371–72.  Additionally, even if "authoritative," a nominated case does not count as clearly established law unless it satisfies the "specificity" requirement. The analysis under this prong requires an evaluation of the alleged constitutional violation in terms of the "particular conduct" at issue.  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

The Supreme Court has also "repeatedly" stressed that courts must not "define clearly established law at a high level of generality," since doing so avoids the crucial question whether

---

[45] Several principles have emerged on the "robust consensus" front.  First, there can never be a robust consensus when there is a circuit split.  *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc). Second, even without a split, many other Circuits must be in agreement before there can be a "robust consensus."  *Compare Vincent v. City of Sulphur*, 805 F.3d 453, 549 (5th Cir. 2015) (explaining that "two out-of-circuit cases . . . hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity"), *with Johnson v. Halstead*, 916 F.3d 410, 420–22 (5th Cir. 2019) (stating, in dicta, that six out-of-circuit decisions, two of which were unpublished, amounted to a "robust consensus").  Third, the Fifth Circuit has ruled that unpublished decisions can "illustrate clearly established law[,]" but "not create clearly established law[,]" *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018), although notable jurists in other Circuits have said that unpublished opinions should play no role at all. *E.g.*, *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc).

the official acted reasonably in the particular circumstances that he or she faced. *Id.* (citation omitted). This principle reflects a "manifestation of the law's general concern about retroactive punishment or liability." *Wesby v. District of Columbia*, 816 F.3d 96, 110 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (citing Supreme Court precedent).

Applying these standards to this case, there is no governing authority holding that Marx, Officer Williamson, or Officer Lee acted objectively unreasonable under clearly established law. Officer Williamson was only required to have a reasonable—even if mistaken—belief that pushing Riley was justified. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (qualified immunity protects reasonable, if mistaken, judgments by law enforcement). And there is certainly no evidence suggesting that Officer Lee or Marx acted objectively unreasonable under clearly established law. The clearly-established prong of qualified immunity thus provides an alternative ground for dismissal. *See Garcia*, 2024 WL 3326088, at *1.

### III.    Riley cannot establish the additional requirements of municipal liability.

It is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 847, 867 (5th Cir. 2012) (citation omitted). Because Plaintiffs cannot demonstrate a constitutional violation against any individual defendant, Plaintiffs cannot maintain a cognizable claim against the City.

But even if they could, a mere constitutional violation is never enough to establish municipal liability because municipalities are not responsible for the actions or inactions of their employees under a respondeat superior theory of liability. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Rather, municipalities are subject to suit only where a plaintiff sufficiently demonstrates injury from an official policy or custom, as distinguished from mere

tortious conduct of an employee. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001). To prevail under *Monell*, Riley must demonstrate both an official policy or custom, and that the policy or custom was the "moving force" behind the alleged violation. *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018).

Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." *Thomas v. Prevou,* 2008 WL 111293, at *3 (S.D. Miss. Jan. 8, 2008). The need for specific factual allegations where a litigant seeks redress based on a purportedly illegal policy or custom has been emphasized by courts. *Brown v. City of Hazlehurst*, 741 So. 2d 975, 981 (Miss. Ct. App. 1999) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, *cannot be conclusory; it must contain specific facts*.") (emphasis added).

Here, Riley cannot identify an express policy that he believes is unconstitutional. *See Jernigan v. City of Parker*, No. 4:14-CV-803, 2015 WL 4624810, *3 (E.D. Tex. Aug. 3, 2015) ("Without any facts alleging a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the City of Parker and without facts stating how the lack of written policy specifically addressing the mentally impaired was the 'moving force' behind the violation, no claim has been stated under the first prong." (cleaned up)).

Nor can he identify a widespread practice of similar instances that could give rise to an unofficial municipal custom. To prove a widespread practice or custom claim, Riley must show that similar unconstitutional acts "have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed

conduct." *Zarnow v. City of Witchita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted). That is, a pattern requires "sufficiently numerous prior incidents," not [i]solated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1984). A pattern also requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (collecting cases).

Furthermore, no jury could reasonably infer that Marx was a final policymaker or that he ratified Williamson's alleged actions. The identity of a final policymaker is a question of law, specifically one of state law. *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019). Under Mississippi law, Boards of Aldermen are the "governing authority" for a municipality. *See*, *e.g.*, *Sockwell v. Calhoun City*, 2019 WL 3558173, at *2 (N.D. Miss. Aug. 5, 2019). The Board is the final policymaker for the City. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (emphasis in original) (It is "critical to distinguish between 'an exercise of *policymaking authorit*y and an exercise of *delegated discretionary policy-implementing authority*.'"); *Bolton v. City of Dall., Tex.*, 541 F.3d 545, 550 (5th Cir. 2008) (legislative, rather than executive, positions generally constitute final policymakers, since executive officials do not have "responsibility for making law or setting policy in any given area of a local government's business").

And no matter which avenue Riley travels under, whether a policy, custom, or something else, Riley is still required to prove "moving force" causation. To do that, Riley must prove that the City acted with deliberate indifference, or "that a constitutional violation is a plainly obvious consequence of the final policymaker's decision." *Doe*, 964 F.3d at 366. "To succeed, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal

rights." *Doerr v. Sisson*, 563 F. App'x 291, 294 (5th Cir. 2014) (quoting *Valle v. City of Hou.*, 613 F.3d 536, 542 (5th Cir. 2010)).  "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'"  *Valle*, 613 F.3d at 542.  There is no evidence to suggest that the City or any policymaker had any degree of unconstitutional culpability.

## CONCLUSION

In conclusion, there is no underlying violation of the Constitution on these facts, but even if there was, Riley cannot overcome the high standards of qualified immunity or impose municipal liability on the City.  For the reasons set forth in this Memorandum, Defendants request that the Court grant summary judgment on Riley's claims, dismissing all claims.

This, the 3rd day of September, 2025.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

By:     */s/ Loden P. Walker*
           G. Todd Butler, MB #102907
           Loden P. Walker, MB # 105996
           1905 Community Bank Way, Ste. 200
           Flowood, Mississippi 39232
           Post Office Box 320159
           Flowood, Mississippi 39232
           Telephone: (601) 352-2300
           Telecopier: (601) 360-9777
           todd.butler@phelps.com
           loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I, Loden P. Walker, do hereby certify that I have this day filed the foregoing *MEMORANDUM IN SUPPORT* with the Clerk of the Court using the ECF system and provided a true and correct copy of the foregoing document to the following non-ECF participant:

Jay Riley
111 Ford Dr.
Apt. 1
Petal, MS 39465

**PRO SE PLAINTIFF**

THIS the 3rd day of September, 2025.

*/s/ Loden P. Walker*
LODEN P. WALKER